Edie Cunningham, on behalf of Mr. Benitez, I'd like to reserve two minutes. This Court should remand for several reasons. You have to keep track of your own time. Yes, Your Honor. This Court should remand for several reasons, including the retroactive— Well, let me just start out and just say why he's raising the drug quantity issue for the first time in appeal, and there's just a boatload of Ninth Circuit precedent that says you can't do that. Your Honor, we are not asking for a remand under 3582. This is a different argument. Mr. Benitez is on direct appeal, and because of the quirk in the way the policy statement is written, this is his only procedural mechanism for getting relief. His co-defendant, Marcella, is eligible for a 3582 reduction. But he came here one time before, and he was reversed, wasn't he? Your Honor, this was a resentencing. Okay. And so count two was reversed the last time, and so it went back. But he — but there was still the same quantity issue was in the first case, and it wasn't raised there. Well, Your Honor, it's still at issue in this case because resentencing is sentencing anew, and the sentencing explanation at the resentencing suffered from the same flaws as the first sentencing. That wasn't raised in the first appeal, but he has the right to raise it in the second appeal because the district court's explanation was the same and was inadequate the second time around as well. Well, it seems like the United States v. NAGRA says otherwise. I disagree with that, Your Honor, and in any event, the procedural error in this case is plain error. But Marcella, the co-defendant, is eligible for a 3582 reduction because she got a within-guideline sentence, the low end of it, 168 months. She's eligible for a reduction of up to 135 months. Mr. Benitez, because of a quirk in the policy statement, is not eligible because he got a below-guideline sentence. And under Dillon, the district court doesn't have discretion to reduce his sentence under 3582, but it is very probable that he will want, the district court will want to reduce Marcella's sentence because it was very important. Well, she's a very good candidate. She has no criminal history other than this. She's a perfect candidate for a reduction. But because the district court wanted Marcella to get more than her brother, the district court will probably won't reduce her sentence if it can't reduce Benitez's sentence. And because this is the only procedural mechanism for getting back, it's important to remand it to make sure the district court knows it will have the opportunity to reduce Benitez's sentence if it reduces Marcella's. But there's a larger reason to remand, because this is a retroactive guideline amendment. And just as this court remands for clarifying amendments, which show what the commission thinks the guideline should have been or really meant all along, this shows what the commission thinks the guidelines should have meant all along. And under the Eighth Circuit case Woods, and just general principles of appellate review, it's appropriate for this court to remand in light of the retroactive guideline amendment. Unlike the amendments at issue at Ruiz, Apollonio, and Arena, that amendment was not retroactive. This amendment is, and it's a whole different ball game. And defendants like Benitez, who had below guideline sentences to begin with, are most deserving. Well, let's assume that we look at this for plain error, which would be the best that you could get here, right? Your Honor, no. The district court, you're, I believe you're talking about the drug quantity argument? Yes. I'm not talking about the drug quantity argument. I want to focus on the procedural error argument and the district court's failure to address the disparity arguments. The district court's explanation was wholly inadequate. Mr. Benitez emphasized the disparity with regard to BB. At the resentencing, he emphasized that now he was even in a more similar position to BB and the other co-defendants because this court had reversed his importation conviction, so he was more similar. But the district court did not address his culpability relative to BB at all. And under Trujillo and the Third Circuit case Freedman, if there are specific disparity arguments made with regard to specific co-defendants, the district court has to address that. Both BB and B were considered average participants. The evidence showed that Benitez's offense level was based solely on the drugs sold to for the trial and BB's testimony at trial showed that BB was involved long before Benitez and BB was doing something that was more egregious than Benitez. Benitez was just taking orders from both BB and his sister. In fact, BB testified at trial, Benitez would just do whatever I instructed him to do. If he, if I needed him to hold the plastic, I told him to hold the plastic and he would do it. And Benitez also took orders from his sister. How many of the people went to trial here? Your client went to trial. BB didn't go to trial, right? He didn't, but he got a very favorable sentence based on what really happened in this case and it was clear at the time of BB's plea that the 11 kilograms attributed to him was just a fiction. His plea agreement says, I would travel from Florida to — Well, but I mean, why can't someone, we've got to call him BB for, because he's an, because he testified against your client, right? Well, Your Honor, that's a very good point. And so why isn't, why you, you seem like total indignation and outrage and shock over the fact that someone that testifies against another defendant and didn't go to trial might get a more favorable deal than someone that goes to trial. Your Honor, what happened is BB was sentenced to 70 months and he got three levels for acceptance and two levels for safety valve. And that resulted in the 70-month sentence. Then, two weeks before trial, he agreed to cooperate. Then after the trial, he got a two- or three-year sentence. So I'm not saying that my client deserved a two- or three-year sentence. I'm saying that he deserved a sentence that didn't create the disparity with the first 70-month sentence. And I am, I mean, this does, is very troubling to me because that. Well, I guess, but what's your best legal authority that everyone's got to get exactly what, what you think they should get relative to what your client got? I mean, they're all individual determinations. Well, Your Honor, my client. And it does make a difference whether you testify. It does make a difference whether you go to trial. It does, all of those things do make a difference. Well, Your Honor, my client didn't testify at trial, so there's no basis there. As I said, BB cooperated after the 70-month sentence. And this court's precedent, Capriola says, if the district court imposes a sentence and it's unclear whether a defendant was punished for going to trial, then remand is necessary to give the court the opportunity to explain and consider that. And that is exactly what happened here. And it's very, very troubling because BB, excuse me, my client was held responsible only for the drugs that were sold to BB. But my client had no control over the drug quantity. BB ordered the drugs from Marcella, told her how much she wanted. Marcella then called the overarching conspiracy and told them how much she wanted. And Benitez, my client, is just following both of their orders. Other than being troubling, give me the legal authority that— Capriola, Your Honor. And Trujillo is also a very on-point case. Excuse me. And Trujillo and Freedman, Freedman even more so from the Third Circuit, is very on point. But the bottom line is my client wasn't in control of anything. He was taking orders from BB, who was selling drugs and admitted in his plea agreement that he was smuggling these drugs across the country and selling them in Florida. To me, any reasonable person would agree that that is very troubling behavior. And it's my client, Benitez, who gets nabbed with the higher drug quantity. And I should point out, too, that the overarching leader of the conspiracy that imported drugs from Mexico, Zezueta Miranda, he went to trial. He was responsible. He had a gun involved. He was a leader. He was responsible for an exponential amount of drugs, many times more than what my client was responsible for. But he was treated very leniently. He got a 180-month sentence on the drug charges compared to my client's 144-month sentence. And I respectively submit that that really makes a mockery of my client's constitutional right to go to trial. Thank you. Good afternoon, Your Honor. Afternoon. May it please the court, counsel. My name is John L. Luca, and I'm an assistant United States attorney, and I'm here to represent the government in this matter. The district court committed no error in the resentencing in this particular case. To jump to Judge Callahan's concern, indeed, NAGRA does preclude raising the issue of the quantity. That was at issue in the first case. There was an objection filed by trial counsel. The trial court heard argument on that and overruled the objection. When the first appeal was presented to this court, that issue was not raised. When we got back for resentencing, in fact, defense counsel at that time stated that he advised that previously filed objections were not for him to raise again before the district court. NAGRA was a similar case, although it involved alien smuggling. But in that particular case, this court found that all of the complaints that the defendants in that case raised on appeal were all known to them at the time of the first appeal. And therefore, this court declined to allow them to raise it again. And so we do ask that this court, following NAGRA, not allow the issue of the drug quantity to be raised again. Capriola? I'm sorry. Can you respond to counsel's argument on the disparate sentences? I'm not entirely—I understand the argument that counsel believes they're disparate and is comparing them, but I'm not exactly understanding the legal underpinnings, and she's saying Capriola. So I would like your response to that. Certainly, Your Honor. The government submitted a 28J letter citing a variety of cases that hold that Capriola is limited to its facts. Also important is that Capriola was pre-sentencing guidelines. The government submits that Monroe is the case that is going to control, not Capriola. In Monroe, that is obviously a post-sentencing guidelines case. And the court stated that where a district court considers a defendant's individual characteristics and circumstances, where a district court judge provides a list of reasons, a statement of reasons for its decision, then this court is to presume that the district court was not punishing a defendant for deciding to go to trial. And from this point forward, following Monroe, the court should presume that, in fact, it was proper. Well, I didn't quite understand. If he doesn't get a reduction, then Marcella doesn't get a reduction. And how — I'm just not quite understanding how — that there seems to be reaching the whole scheme and everyone needs to be resentenced, but I'm trying to focus, how does that relate to this defendant? The government submits that at this point, as this court has held in numerous unpublished decisions, anything related to 782, Amendment 782, should be presented and must be presented to the district court first. The government does not presume to know what the district court may or may not do. The government doesn't presume to know that the district court — Can this now be presented to the district court? I'm sorry, Your Honor? Can this now be presented to the district court? If it should be presented to the district court first, should we remand to allow them to present it to the district court? No, Your Honor. This court has held that this court does not entertain 782 amendments on direct appeal and that, in fact, that should be presented to the district court upon the conclusion of the appeal. Hayden is particularly instructive to Judge Callahan's question. Mr. Benitez has failed to identify any concrete example of a defendant who, in fact, has received a reduction under 782 in this case. It is all hypothetical. It is all based on guessing and trying to presume what a district court judge might do in a case. And it's just not appropriate. It's very premature and it's presumptuous at this point to try and guess what the district court would do. And so at this point, there is no defendant in the case who has received any kind of reduction, and the sentences stand. With regards to what the defendant presumes to be a disparate sentence, it's important to note that each of the defendants truly stood on their own in this case. The district judge sat through the trial. The district judge took all of the pleas for all of the co-defendants, and the same district judge sentenced all of the co-defendants. So this is a case of a district judge who was very familiar with the record, was very familiar with each individual defendant's circumstances. The defendant, Mr. Benitez continues to argue that he's just like BB, or he's just like Jaramillo, or he's just like another defendant. And the reality is that the record doesn't support that finding. The record supports the finding that he was the only one to traffic in his particular quantity of cocaine. He was the only defendant who did not get safety, vow, or acceptance of responsibility. This court found that he was an average participant, as was BB. There are no degrees within average participant, which is what the defendant is trying to parse out. The court found that the defendant had been involved for a particularly long period of time, that he started his life of crime at a particularly high level, and that he was willing to participate in a substantial drug operation. Now, if NAGRA doesn't preclude this, I asked counsel for Mr. Benitez if we were in plain error, and she said no. What would your answer be if NAGRA did not preclude raising this issue on the drug quantity? We submit that the standard is clear error, Your Honor, as to the drug quantity. In this particular case, we would submit that under CULPS, the court did go through a three-step approximation, and that the record indeed supports, by a preponderance of the evidence, the drug quantity that the district court arrived at. It's a record. Let's see. I think there was government informant testimony that he made at least six purchases. He possessed, on average, $250,000 when he went to buy cocaine from Benitez and his sister, and a kilogram of cocaine cost $22,000 to $23,000. So if you rely on that, it would seem that the record would support at least 50 keys. There was also testimony that BB did a 20-kilogram deal with the defendant. Then there was the 11 kilograms that was actually seized on November 22nd, 2009, and that deal was supposed to have been for 15 keys, but ultimately they could only come up with the 11. Those quantities do not take into consideration the evidence that the court heard regarding the organization's other customers. There was a call intercepted where Benitez's sister ordered up 28 kilograms of cocaine that was not destined for BB. There was another call between her and Zazueta's predecessor, Beltran, where she ordered up another 10 kilograms. Like in Flores, where there's nothing in the record to support that a lower guideline would apply, there is no evidence that would support going below the 50 kilograms, and therefore under Flores, employing Culp's three-pronged test, the court, in fact, arrived at the appropriate guideline range, which was more than 50, but less than 150 kilograms of cocaine. What's your response to the defendant's argument that she's not arguing that what's the amendment number? 782 applies in this case. As I understand her argument, it says, well, the sentence should be vacated and remanded so that the district court can consider the sentence in light of the policy behind Amendment 782. In other words, the reasons why that amendment was passed, so the district court can consider whether or not those reasons should be applied in this case. What's your response to that? That's the argument, as I understand it. The original argument made was that 782 should apply and that it should go back. The nuanced argument after the 28J letter is now that it's not that 782 applies to Benitez, but that it applies to others maybe, and maybe if they get different sentences, then perhaps Benitez should get a different sentence. Under Urena, what the defendant is arguing for is that this court follow the Godin case, which came out of the First Circuit. This court in Urena specifically joined the Seventh Circuit in rejecting Godin's approach. And so the argument of let's give the district court the chance, direct quote, the chance to reevaluate the sentencing, even though nothing has actually happened in concrete format on Amendment 782, is what this court specifically rejected in Urena. Let me see if I understand this. The district court did say that he was sentencing the defendants totally in light of the overall rules and the structure. That was one of the factors the district court considered. And now the rules changed for some of the others, but not for this defendant? We don't know, Your Honor. That's exactly the point, is that this is all speculation on the part of Mr. Benitez. No, no. What I'm trying to find out is does something apply now to the other defendants that doesn't apply to this defendant? We don't know. Why is that? Because nothing has been decided by the district court as to each of these defendants. So there is no... I'm not asking whether he's going to change them. I say, is this amendment applied to the others and not to him? Correct. My answer is that we do not know that yet. The district court has not made a... No, but that'll affect the district court, is what you're saying. My answer is that the district court has not made a finding that 782 applies to any defendant in this case yet. And if it did apply... Well, can I ask one question? Yeah. Government opposes the application of the amendment to these defendants, right? We've not filed any type of response or any pleadings about 782 in this case. Well, what is your position? We truthfully have not reviewed any of the... There's only been one pleading. There's only two defendants who would likely submit... One pleading is what, a motion? Yes, a 782 motion. You haven't responded to the motion? No, it's presently stayed because of the defendant's sentence length. So it's not been responded to. Well, what would your position be if the district court did want to change the sentences of the other defendants? It would depend on the record that's developed on the 782 issue, Your Honor, which we have not done. And so at this point, I don't presume to guess at the government's position. I don't presume to determine what the district court would do. I guess what I think my colleague might be touching on is if, say, there were changes, does Mr. Benitez have any option at that time to make a motion in the district court? It depends on the continued application and how, again, that can change as well. There can be a new amendment that modifies how it's applied to defendants and who's eligible. At this point, because there is no one in the case who's received any kind of 782 benefit, it's just too premature to try and guess at what might happen down the road. To do that, we would have to guess that people are eligible. We would have to guess that the district court would automatically lower anyone who's eligible to unknown sentences, which would then potentially create some disparity in the defendant's opinion. And at this point, that's just all very speculative. But I guess what I'm saying, if, in fact, those things all did occur, if they all lined up, is there any option left to the defendant, Benitez? Could he put anything in the first instance in the district court? Obviously, we wouldn't do it. This Court is welcome to not preclude him from doing that by finding that he's not eligible under 782. And then he can follow the same process that every other defendant in the system is following, which is present it to the district court first in the form of a motion. But isn't it the government's position that this defendant is not eligible? It is likely that he is not eligible. It's also the government's position that we don't know what the district court will do. So this could all be hypothetical, because if no one else gets a benefit, then all of the sentences stay as it is. So defendants' requests that this Court somehow accord him a benefit based on guesses and hopes of what might happen that actually haven't, in fact, happened, puts him at being treated differently from all the other defendants in the system who don't get this chance to try and come and say, please give me a reduced sentence, even though nobody else has had a reduced sentence yet. I see I'm far over my time. My question is, would we be foreclosing this defendant from making the argument to the district court? Not necessarily, Your Honor. This Court has four decisions, unpublished memorandum decisions, where it did not foreclose upon a defendant's opportunity to file anything at the district court. So this Court's precedent allows for that opportunity to still be available to the defendant. You mean we could put in our decision a provision that said, this does not foreclose him from making a motion, and the government would not say he's foreclosed from making a motion? No, Your Honor. What I'm saying is that the previous four memorandum decisions issued by this Court, there's been no specific language other than in Munguia Diaz, in which case this Court did foreclose upon that defendant's opportunity, finding that they were not eligible because their sentence, coincidentally, same 144-month sentence, was already well below what the new guideline range would have been. We ask that you affirm the district court sentence in this matter. Thank you very much, Your Honors. Thank you. Your Honor, it is clear under the policy statement that Mr. Benitez is not eligible for a reduction under 3582. That's why it's being raised in this direct appeal. If he were eligible, we would be filing a 3582 motion. And it is important that the Court make clear to the district court that if it does re-sentence Marcella to a lower term, which by all accounts the district court probably will want to do in accordance with congressional policy, that it will have an opportunity to also re-sentence Mr. Benitez. And this is the only procedural mechanism for doing that. If this Court prefers to stay the appeal until Marcella's reduction is considered, that would be another option. But I would just ask the Court to make it clear to the district court that it will have the opportunity to do this, because it was very important to the district court to give Mr. Benitez a lower sentence than Marcella. And Ruiz, Apollonio, and Arena are different. They involved non-retroactive amendments. This is a retroactive amendment. The Eighth Circuit in Woods that's cited in the 28J holds that as a matter of course on direct appeal, the Court of Appeals should remand for reconsideration in light of a retroactive amendment. Hayden is very different. In Hayden, the defendant did not make the arguments that we're making here. The defendant in Hayden was eligible for a reduction because he got an above-guideline sentence. Also, I believe there's some confusion between the drug quantity approximation argument and the procedural error argument. The procedural error argument is that the district court did not adequately address the reasons for the disparity. And as I explained, acceptance of responsibility and safety valve do not account for it. B, my client was certainly not the only one involved with the amount of drugs of 70 kilograms. If you accept that, B.B. was the one who ordered those drugs and bought those drugs, and Marcella was the one who dealt with the overarching conspiracy. Oh, and Monroe, the district court, excuse me, the government's citation of Monroe is inapposite because Monroe was decided in 1991 when the guidelines were mandatory. So the district court did not have discretion to account for guideline-created disparities, fictional disparities in defendants. Now, actually, Capriola has been revived because the rule under Booker is that the district court has to do something to address these kinds of disparities that are based on fictions that everybody knows are fictions, as happened in this case. I think your time has expired. Thank you, counsel. Yes, Your Honor. Thank you. Case just argued will be submitted.
judges: Reinhardt, Tashima, Callahan